# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

COMMUNITY FIRST CREDIT UNION,

    Plaintiff,

v.                                          Case No. 08-C-57

THE UNITED STATES OF AMERICA,

    Defendant.

## JURY INSTRUCTION MEMORANDUM

This is a tax refund case in which Plaintiff Community First Credit Union seeks return of taxes it paid the Defendant United States on income generated from the sale of credit life and disability insurance, as well as guaranteed asset protection ("GAP"), to its members during calendar year 2006. The United States contends the income derived from the sale of such products is subject to the unrelated business income tax ("UBIT") and has denied Community First's request for a refund. A jury trial on the issue is scheduled to begin on May 11, 2009. The parties have submitted proposed jury instructions in anticipation of trial, and each has filed a set of preliminary objections to the substantive instructions proposed by the other. This memorandum will address some of the objections raised by the parties.

Some of the issues raised by the parties are substantive, and perhaps even outcome determinative. On the other hand, others are minor matters of form. An example of the latter is the defendant's objection to the plaintiff's preliminary instruction that the defendant United States will be referred to in the course of the trial as "the Government" or "the IRS." The defendant notes that

the IRS and the United States are not interchangeable parties and, indeed, this Court would not have jurisdiction over a case brought against the IRS. The defendant also contends that the name "Government" is confusing in that it does not necessarily mean the federal government. For these reasons, the defendant opposes the plaintiff's proposed instruction referencing it as other than "The United States of America" or "The United States."

Rather than refer to the defendant as "The United States of America" or "The United States," the Court and the plaintiff may refer to the defendant as "the Government" over the course of the trial as a shorthand way of identifying it. This is how the United States Supreme Court has referred to The United States in similar cases. *See, e.g., United States v. American Bar Endowment*, 477 U.S. 105, 109 (1986). To make clear that this is a reference to the defendant and avoid any confusion, the jury will be advised of this in the preliminary instructions.

The Government offers a similar technical instruction to Community First's Instruction XXX, which explains that Community First is a tax-exempt organization that, while generally not subject to income tax on its ordinary income, is subject to UBIT. The Government notes that Community First's instruction states that "'all tax-exempt organizations must pay' UBIT." (Def.'s Br. re Jury Instructions at 7.) This is an incorrect statement of the law, the Government contends, because entities that are tax-exempt and organized pursuant to federal statute are not subject to UBIT. (Id. (citing 26 U.S.C. §§ 501(c); 511)). Here, too, the Government's objections is easily addressed by substituting the word "some" for the word "all."

The Government also objects to Community First's proposed jury instructions to the extent that they describe the relevant activities in the case as "offering" credit insurance and GAP products or "making these products available." The government notes that the relevant activity for purposes

2

of determining whether unrelated business income tax (UBIT) is owed is the income-generating activity. It is not the offering of these products that generates income to Community First, but their sale. Thus, the government contends that the instruction should properly describe the activity at issue as the sale of credit insurance or GAP products. I agree with the government's argument in this regard, and the Court's instruction will reflect that the activity at issue involves sales, not simply offering products for sale.

On a more substantive level, one of the primary disputes between the parties concerns the instruction concerning the tax exempt purposes of a state chartered credit union. Wisconsin law defines credit union as "a cooperative, non-profit corporation, incorporated under this chapter to encourage thrift among its members, create a source of credit at a fair and reasonable cost, and provide an opportunity for its members to improve their economic and social conditions." Wis. Stat. § 186.01(2). Based upon this definition, Community First offers the following instruction regarding the purposes of a Wisconsin state chartered credit union:

> Community First's basic purposes as a nonprofit, mutual Wisconsin state-chartered credit union, as stated in Wisconsin credit union law, are the following:
>
>> To be "a cooperative, nonprofit corporation, incorporated . . . to encourage thrift among its members, create a source of credit at a fair and reasonable cost, and provide an opportunity for its members to improve their economic and social conditions."

Plt's Instruction XXXI, Docket # 59 at 46.

The Government objects to Community First's proposed instructions on the purposes of a credit union on the ground that it omits the requirement under federal law that a credit union "operate without profit and for the mutual benefit of its members." In the view of the Government, a credit union has four exempt purposes: The three purposes enumerated under the Wisconsin

3

Statute and the purpose of being organized and operated for the mutual benefit of its members as stated in the Internal Revenue Code itself. *See* 26 U.S.C. § 501(c)(14)(A). Indeed, a primary component of the Government's case seems to be that the sale of the products that has generated the challenged income in this case do not inure to the mutual benefit of the members of the credit union because the products are not good buys from the standpoint of the borrower. In the Government's view, there are more cost-effective ways of protecting the credit union from the risk of default on loans made to its members.

The requirement that a credit union be operated for mutual purposes, however, is part of the definition of a tax exempt credit union. It does not constitute a separate purpose of a credit union. Here, there is no dispute that Community First is a tax exempt credit union. In determining what its purposes are, I look to the state law creating credit unions. *See United States v. Cambridge Loan and Building Co.*, 278 U.S. 55 (1928). Wisconsin law sets forth three purposes for credit unions. They include: "to encourage thrift among its members, create a source of credit at a fair and reasonable cost, and provide an opportunity for its members to improve their economic and social conditions." Wis. Stats. § 186.01(2). These are the purposes of which the jury will be advised, and it is to these purposes that the jury will be asked to decide whether the sale of credit life and disability insurance and GAP protection are substantially related. In my view, they are clearly and succinctly stated in the statute and there is no need to expand upon them further as the Government has attempted to do in its proposed Instruction No. 3.

For essentially the same reason, I will omit from the instruction the language proposed by Community First that a credit union has, as an additional purpose, "to be a cooperative, non-profit corporation." Docket 59 at 46. Here too, the language "cooperative non-profit corporation" is part

4

of the definition of a credit union, not its purpose. Were it not a cooperative non-profit corporation, community first would neither be a chartered credit union under Wisconsin law nor a tax exempt organization under 26 U.S.C. § 501(c)(14)(A). It adds nothing to the instruction and only offers confusion to include within its purposes the very definition of what a credit union is.

Next, the Government objects to Community First's proposed instruction number XXXII which incorporates a provision of the Wisconsin Administrative Code promulgated by the Department of Finance. *See* Wisconsin Administrative Code § DFI-CU 58.01. The challenged instruction reads:

> A credit union in Wisconsin has the legal power to sell insurance, annuities and related products.
>
> Under Wisconsin law, the credit union's sale of credit life and health and accident insurance in connection with credit union loans is directly related to the business of the credit union.

Plt's Instruction XXXI, Docket # 59 at 47. The Government's objection is well taken. The authority of Community First to sell insurance is not at issue in this case. There is no dispute that it has the authority to do so; the question at issue is whether income it derives from such sales is taxable. Moreover, it is not the role of the Wisconsin Department of Financial Institutions to decide whether income derived from such sales is taxable as unrelated business income. While the sale of such products may be "directly related to the business of the credit union," the regulation has no bearing on whether it is substantially related to one of the credit union's tax exempt purposes. Accordingly, the court will not instruct the jury on DFI-CU § 58.01, nor will evidence of this regulation be admissible at trial. As I noted in my earlier decision, the "State of Wisconsin's laws governing credit unions are not dispositive of the issue here; otherwise this action would not be

5

required." (April 228, 2009 Decision and Order, Doc. # 66, at 2.) This proposed instruction will therefore be omitted.

Finally, the Government objects to Community First's Proposed Instruction XXXIII on the ground that it suggests there are only two types of products at issue in the case. The Government anticipates three separate questions relating to credit life insurance, credit disability insurance, and GAP coverage must be submitted to the jury. At this point, I am inclined to agree with Community First that there is no significant difference between the first two products in terms of their relation to the tax exempt purposes of a credit union. Credit life and disability insurance protect against default in the event the borrower becomes deceased or disabled. Essentially, they have the same purpose and operate in the same manner; the only difference is the event that triggers the coverage. Unless the government can convince the Court that there is a significant difference between the two products, both simplicity and the interest in avoiding jury confusion would warrant a single question rather than two relating to these products.

The balance of the instruction proposed by Community First is essentially taken from Treasury Regulation § 1.513-1(d). 26 C.F.R. §1.513-1. This regulation sets forth the definition of unrelated trade or business. The instruction submitted by Community First substantially sets forth the content of the instruction and is, in the court's view, the most accurate statement of the law governing the issue. Accordingly, with some minor modifications, the court has adopted Community First's proposed instruction.

A draft of the Court's instructions incorporating the decisions set forth herein will be filed with this decision. These instructions are, by their very nature, preliminary. Until the jury is actually instructed, the Court retains the right to modify its instructions to correspond more

6

appropriately to the evidence that is presented and the law as it is discerned. The parties will, of course, be given the opportunity to make a further record concerning these matters during the jury instruction conference after the evidence is complete. It is also possible that other issues may arise that will require further modification of the proposed instructions. This memorandum is intended to assist the parties in the preparation of their respective cases.

Dated this   8th   day of May, 2009.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge