UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COMMUNITY FIRST CREDIT UNION,

        Plaintiff,

v.                                         Case No. 08-C-57

UNITED STATES OF AMERICA,

        Defendant.

**DECISION AND ORDER**

Community First Credit Union, a tax-exempt credit union, brought this action seeking a refund of taxes it paid based on 2006 sales of credit life and disability insurance, as well as GAP (guaranteed asset protection) insurance. (*See* Order of April 28, 2009.) A trial was held, and after four days a jury returned a verdict in favor of Community First. The United States has now filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50. For the reasons given below, the motion will be denied.[1]

The question posed to the jury was whether the Plaintiff's sales of insurance products – credit life and disability insurance, as well as GAP coverage – were "substantially related" to the tax-exempt purposes of Community First Credit Union. *See* 26 C.F.R. (Treas. Reg.) § 1.513-1(d). These purposes include encouraging thrift, providing fair credit, and providing an opportunity for

---

[1] I note that the Plaintiff, prior to trial, waived its right to a jury. There were significant discussions about whether a jury would be impaneled, and the government ultimately insisted on having a jury. There is some unavoidable irony, therefore, in the present Rule 50 motion.

members to improve their social and economic conditions. "Under Rule 50, a court should grant judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745-46 (7th Cir. 2007). The movant "bears a 'heavy burden' in making such a claim: he must demonstrate that 'no legally sufficient evidentiary basis' existed for the jury's verdict." *Maher v. City of Chicago,* 547 F.3d 817, 824 (7th Cir. 2008) (quoting *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)). Countless cases underscore the high burden a movant must overcome, and this is not surprising. A civil jury trial involves the expenditure of substantial resources and requires citizen jurors to spend significant time away from their jobs and families; courts, not surprisingly, are especially reluctant to throw out the judgment of jurors absent overwhelming cause.

The government's arguments are familiar ones. It highlights the testimony of its experts and the other evidence presented at trial that showed that Community First "overcharged" for the insurance products and failed to adequately educate its members about them. Its principal assertion was voiced by expert witness David Birnbaum, a self-described "consumer advocate." Birnbaum opined that the insurance products were simply too expensive given their relatively low loss-ratios (i.e., they did not pay out very much or very often), and he further argued that sales of the insurance products enriched lending institutions and insurers at the expense of consumers. The government argues that this (and other) evidence overwhelming established that Community First's sales of the insurance products did not contribute to its tax-exempt purpose of encouraging thrift. If credit union members are throwing their money away on such products, the argument goes, they cannot be engaged in "thrift."

2

The jury was not irrational in concluding otherwise. The government's consumer advocacy approach was indeed based on calculations and facts, but the jury was not required to draw the same inferences from those facts that Birnbaum did. In particular, the government's case largely relied on the notion that the insurance products were a "bad deal," but the jury was not bound to accept that conclusion. The government's analysis suggested that the price of the insurance was too rich, but the fact that the products could have been cheaper does not mean they did not encourage thrift – the government never pointed to any authority that says "thrift" means always paying a rock-bottom price and nothing else. Moreover, it is likely that the jury did not share the government's largely reductionist definition of "thrift." Instead, the jury seems to have preferred Community First's more expansive definition. This definition accounted for price, certainly, but it also incorporated the entire consumer experience into the equation (e.g., "peace of mind," security, convenience, etc.) Considering the relatively low actual cost of the insurance products (the amounts of money being insured were fairly small), it is not surprising that the jury may have been unimpressed by the government's focus on loss-ratio calculations and reverse competition. Even if comparable insurance products were available outside the credit union at lower prices (which was not always true, given the small dollar amounts being insured), would it really have been "thrifty" for a consumer to turn down the credit union's insurance and spend hours researching alternative insurance products only to save a few dollars? A jury might well have concluded that thrift would be better served by accepting Community First's insurance, and it thus would have been well within the bounds of reason to conclude that loss-ratios on the insurance products at issue were simply not the be-all and end-all of the meaning of thrift.

3

In addition, it is likely that the jury included wealth preservation in its definition of "thrift." It heard from several witnesses who had positive experiences with the insurance products – those whose policies were triggered by unfortunate life events such as death or accident. Even if the jury agreed with the government that the premiums could have been lower, it could have found that the insurance was a valuable part of a member's wealth preservation program. The possibility that other kinds of insurance may have accomplished the same goals at a lower price does not necessarily mean a member is not engaged in "thrift" when he endeavors to insure against possible losses.

Ultimately, none of the government's arguments suggest the jury lacked an evidentiary basis for reaching its verdict. Instead, the government is asking this Court to reweigh the evidence and find that the jury should have preferred its version of the evidence to the Plaintiff's. That is outside the bounds of what Rule 50 allows. The jury had ample evidence by which it could conclude that the insurance products served the tax-exempt purposes of thrift (or any other of the purposes). Accordingly, the motion for judgment as a matter of law is **DENIED**.

**SO ORDERED** this   14th   day of July, 2009.

                                               s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge